UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ex rel ROBERT I. GOEGGEL, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:96CV2208 JCH |
| ) | |
| BARNES-JEWISH HOSPITAL, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon BJC Health System's ("BJC"), Barnes-Jewish Hospital's ("Barnes"), and Saint Louis University's ("SLU") (collectively the "Hospitals") Motion to Enforce this Court's Orders and for Injunctive Relief ("Motion to Enforce"), filed September 8, 2006. (Doc. No. 221). The matter is fully briefed and ready for disposition.

**BACKGROUND**

By way of background, in November, 1996, Plaintiff Robert I. Goeggel ("Goeggel"), President of Gateway Ambulance, filed a Complaint under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (Case No. 4:96CV2208 JCH) ("qui tam litigation"), against Abbott Ambulance, Terrence Dougherty, Saint Louis University Hospital, and Barnes-Jewish Hospital.[1] (Suggestions in Support of BJC Health System's, Barnes-Jewish Hospital's and Saint Louis University's Motion to Enforce this Court's Orders and for Injunctive Relief ("Hospitals' Memo in Support"), P. 3). The Complaint was filed by Goeggel's then attorneys, Jeffrey T. Sprung, Steve Berman, and John Carey. (Hospitals'

---

[1] As further described herein, the qui tam lawsuit was bifurcated following the Governments's determination to proceed against some but not all Defendants. (Hospitals' Memo in Support, P. 2 n. 2).

Memo in Support, P. 2). On or about May 25, 1999, the United States elected to intervene against Abbott Ambulance and Dougherty, and declined to intervene against the Hospitals. (Id., PP. 3-4). The two claims thus were bifurcated, and on or about June 18, 1999, the United States filed its False Claims Act Complaint (Case No. 4:99CV985 JCH) against Abbott Ambulance and Dougherty (the "Abbott case"). (Id., P. 4).

During the course of the qui tam litigation, this Court entered a stipulated Protective Order, which provided in relevant part as follows:

> In order to protect the confidentiality of information by the parties in connection with these cases, the parties, through their counsel of record, hereby agree as follows:....
>
> D.     All Confidential Information produced, exchanged or disclosed in the course of this case shall be used by the persons to whom the information is disclosed solely for the purpose of this litigation, or related criminal or administrative proceedings, and not for any commercial or competitive purpose....
>
> J.     All provisions of this Order restricting the communication or use of Confidential Information shall continue to be binding after the conclusion of this action, unless otherwise agreed or ordered....
>
> M.     ....The parties specifically recognize that this Order excludes the named parties from reviewing certain information relevant to this action, and their agreement to this Order does not waive their right to seek its modification should circumstances warrant.

(Hospitals' Exh. 4, PP. 1, 2, 5, 6-7).

On or about June 16, 2000, the United States notified Goeggel in writing of its intent to move to dismiss both cases, and to enter into a settlement agreement with Abbott Ambulance and the Hospitals, providing, *inter alia*, that Abbott Ambulance pay the sum of $5.4 million. (Hospitals' Memo in Support, P. 4, citing Hospitals' Exh. 7). The Government further advised Goeggel that any objections he had regarding the settlement could be presented to the Court in accordance with 31 U.S.C. § 3730(c)(2)(B). (Id.)

Prior to the settlement and dismissal of the claims, Goeggel retained new counsel, J. Richard McEachern, to represent him in connection with the settlement and dismissal of the claims. (Hospitals' Memo in Support, P. 4). Upon advice of Mr. McEachern, Goeggel accepted the settlement and his $900,000 settlement share, consented to a dismissal with prejudice of his claims against the Hospitals, and expressly waived his right to contest whether the settlement was fair, adequate and reasonable. (Id., citing Hospitals' Exhs. 8, 9). As part of the negotiated settlement, the Government agreed, "to move to dismiss Cause No. 4:99CV00985, with prejudice," and, "to move to dismiss the claims against the Members[2] being pursued by relator on behalf of the United States in Cause No. 4:96CV2208 JCH, **with prejudice as to [Goeggel]**, and without prejudice as to the United States." (Id., P. 6, quoting Hospitals' Exh. 10, §§ III, 2a and 2b (emphasis added)). Based on the settlement and Goeggel's waiver of his right to a fairness hearing concerning the settlement, this Court signed an Order for Dismissal in the Hospital case on August 16, 2000, thereby dismissing Goeggel's claim against the Hospitals with prejudice. (Id., citing Hospitals' Exh. 11). The Court signed the Stipulated Motion for Dismissal in the Abbott case on or about August 30, 2000. (Id.).

On April 28, 2005, Goeggel filed a legal malpractice suit in the Circuit Court of the City of St. Louis, against Jeffrey T. Sprung, Steve Berman, and John Carey ("legal malpractice action").[3] (Hospitals' Memo in Support, P. 2). Neither SLU, Barnes, nor BJC are parties to the legal malpractice action. (Id.).

---

[2] Throughout the Settlement Agreement, Barnes and SLU are referred to as the "Members." (Hospitals' Memo in Support, P. 5).

[3] This was the second legal malpractice action filed by Goeggel against his former attorneys; Goeggel dismissed the first action without prejudice on May 4, 2004. (Hospitals' Memo in Support, P. 2 n. 1).

In February, 2005, after Goeggel dismissed his first legal malpractice action without prejudice, but before he refiled the action against his former attorneys, Goeggel filed a Motion to Vacate or, in the Alternative, to Modify the Protective Order in the qui tam litigation before this Court. (Hospitals' Memo in Support, P. 8, citing Hospitals' Exh. 12). In his Motion to Vacate, Goeggel requested that this Court vacate the Protective Order in its entirety, or alternatively, modify the Protective Order to permit Goeggel and his counsel in the legal malpractice action to have access to the Confidential Information. (Id.). On April 25, 2005, this Court denied Goeggel's Motion to Vacate, finding, "no intervening or extraordinary circumstances in the present case, sufficient to justify the vacation or modification of the protective order[] at issue." (Id., PP. 8-9, quoting Hospitals' Exh. 14).

Recently, BJC, Barnes, and SLU were served subpoenas commanding them to produce documents and to testify at deposition in the legal malpractice action. (Hospitals' Memo in Support, P. 2, citing Hospitals' Exhs. 1, 2, 3). The documents subpoenaed by Goeggel in the legal malpractice action are the same documents subject to the Protective Order entered in this case. (Id., P. 3). The Hospitals filed Motions to Quash the Subpoenas and for Protective Orders in the legal malpractice action, arguing, among other things, that Goeggel's subpoenas should be quashed because requiring production of the documents directly contradicted this Court's rulings regarding the Protective Order, and was not required in light of the settlement reached in the qui tam litigation. (Id.).

In an Order entered July 24, 2006, the Missouri state court judge held in relevant part as follows:

> Movants [the Hospitals] are non-parties to this action. In this action, Plaintiff [Goeggel] seeks recovery against his former attorneys for alleged legal malpractice in handling, then overlooking, a time-sensitive prosecution of a separated segment of a Qui Tam action in Federal Court here in St. Louis. All parties agree that the statutory time limit to pursue such claims against Abbott Ambulance, St. Louis University, Barnes-Jewish Hospital, and BJC has expired.

> In order to prove up damages in the case at bar, Plaintiff avers the necessity to obtain information now in the possession of Movants regarding ambulance charges, alleged re-billings, and any rollbacks or potential other actuarial activity which might have been applicable to damages in the now precluded Qui Tam action....
>
> Regarding Movants' primary concern, the protective order issued by Judge Hamilton, this Court finds that such order does not preclude discovery of the records in this case....
>
> It is undisputed that the documents Plaintiff seeks by way of subpoena in this case are the same documents that were subject to such a protective order in the Qui Tam action. Movants argue that this protective order was put into place to allow Plaintiff's attorneys, but not Plaintiff, to receive the information, and therefore Plaintiff should be prevented from receiving the information in this case. Plaintiff sought a modification of the protective order in Federal Court, but Judge Hamilton denied the modification on April 25, 2005.
>
> The protective order entered in the Qui Tam action prohibits disclosure of the evidence only by the party receiving the material in that action, not the party that originally controlled the evidence. Movants have cited to no authority, and this Court is not aware of any, that states that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case. This Court finds that the protective order does not preclude the discovery of relevant documents in this case. See Carter-Wallace, Inc. v. Hartz Mountain Industries, 92 F.R.D. 67, 69 (S.D.N.Y. 1981)....
>
> THEREFORE, it is Ordered and Decreed that BJC Health System, Barnes-Jewish Hospital, and St. Louis University's Motions to Quash Notice of Deposition and for Protective Order are OVERRULED. Movants are ordered to produce the requested documents, with the following limitation: Only the records for January 1996 through July 1996 are to be produced.

(See Hospitals' Exh. 5, PP. 1-2, 3, 5-6).

As stated above, the Hospitals filed the instant Motion to Enforce on September 8, 2006. (Doc. No. 221). In the preface to their Memorandum in Support, the Hospitals state as follows:

> [The Hospitals], by and through counsel, move this Court to enforce three separate Orders previously entered in this qui tam litigation. Two of these orders protected confidential information from being disclosed to....Goeggel. The third order was an order of dismissal this Court issued after Goeggel agreed to the settlement of the qui tam litigation and waived his right to a fairness hearing.
>
> These orders are now being collaterally attacked by Goeggel in a legal malpractice action he filed in the Circuit Court of the City of St. Louis against the

attorneys who represented him in this case. The Hospitals seek injunctive relief under the All Writs Act to protect the Hospitals from having to disclose the protected documents to Goeggel in the legal malpractice action. Specifically, the Hospitals seek an injunction barring the enforcement of an order issued on July 24, 2006 by the state court requiring the Hospitals to produce to Goeggel the same documents that are protected from disclosure by a Protective Order issued by this Court.

Such an injunction is appropriate because the Protective Order is still valid, this Court has already denied Plaintiff's Motion to Vacate or Modify the Protective Order and because Plaintiff should be barred from maintaining his state court legal malpractice action because he agreed to the settlement in the qui tam litigation and waived the offered fairness hearing having full knowledge of the facts and having separate counsel advising him regarding the settlement and dismissal. Injunctive relief is needed to protect and secure this Court's orders.

(Hospitals' Memo in Support, PP. 1-2).

## DISCUSSION

### I. Does This Court's Protective Order Bar Production Of The Subpoenaed Documents?

In their first argument, the Hospitals assert that by requesting disclosure of documents in the legal malpractice action, Goeggel seeks to circumvent this Court's Protective Order and Order on his Motion to Vacate. (Hospitals' Memo in Support, P. 9). Upon consideration, however, the Court will deny this portion of the Hospitals' motion, as the Protective Order entered in the qui tam action prohibits disclosure of the evidence only by parties that received the material in that action, not by the party that originally controlled the evidence. In his legal malpractice action, Goeggel seeks disclosure from the Hospitals themselves, i.e., the parties originally controlling the evidence, and such disclosure is not precluded by the Protective Order. See Carter-Wallace, Inc. v. Hartz Mountain Industries, Inc., 92 F.R.D. 67, 69 (S.D.N.Y. 1981).

### II. Is Goeggel's Entire Legal Malpractice Action Barred By His Earlier Acceptance Of The Settlement Agreement?

The Hospitals next assert Goeggel should be barred from maintaining his legal malpractice action, because he agreed to the settlement and dismissal of the underlying lawsuits, and waived the

offered fairness hearing. (Hospitals' Memo in Support, PP. 9-12). Specifically, the Hospitals maintain Goeggel's action is precluded by the doctrines of collateral estoppel and/or equitable estoppel.

### A. Collateral Estoppel

The doctrine of collateral estoppel precludes a party from litigating an issue which that party or its privy previously has litigated and lost. Ryan v. Ford, 16 S.W.3d 644, 648 (Mo. App. 2000). Under Missouri law, "[collateral estoppel] is an affirmative defense, and will be applied only if the party asserting its application shows that: (1) the issue decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit." Id. (citations omitted).

Upon consideration, the Court holds collateral estoppel does not bar Goeggel's action against his former attorneys. Specifically, the Court finds the issue decided in the qui tam litigation before this Court was not identical to the issue presented in Goeggel's legal malpractice action. Rather, in approving the settlement in the qui tam action, this Court considered only whether the settlement was reasonable under the circumstances, and proceeded on the assumption that counsel for Goeggel was adequately representing his interests. See Ryan, 16 S.W.3d at 649. In the pending legal malpractice action, Goeggel is not attacking this Court's conclusion that the settlement was reasonable, but rather raises the separate issue of whether he was adequately counseled in agreeing to the settlement in the first place. Id. at 649 n. 3. See also Baldridge v. Lacks, 883 S.W.2d 947, 950-51 (Mo. App. 1994); Novack v. Newman, 709 S.W.2d 116 (Mo. App. 1985). Whether Goeggel ultimately is able to prove

his allegations, especially in light of the Hospitals' contention that Goeggel was fully aware of the underlying alleged malpractice prior to consenting to the settlement and waiving the fairness hearing, is an issue for the state court to decide in the legal malpractice suit.

### B. Equitable Estoppel

The Hospitals next contend Goeggel's legal malpractice action is barred by the doctrine of equitable estoppel. (Hospitals' Memo in Support, PP. 11-12). The elements of equitable estoppel are: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." Ryan, 16 S.W.3d at 651 (internal quotations and citations omitted).

Upon consideration, the Court will deny this portion of the Hospitals' motion as well. Specifically, the Court notes the Hospitals maintain they entered into the settlement agreement on the condition that the Government dismiss the case against them with prejudice as to Goeggel. (Hospitals' Memo in Support, P. 12). This condition has not been undermined by Goeggel's filing of the legal malpractice suit; in other words, the Hospitals have not suffered injury in the form of Goeggel filing suit against them personally. The Court finds the Hospitals' only alleged injury, in the form of time, energy and money expended in responding to document requests, insufficient to invoke the doctrine of equitable estoppel to bar Goeggel's entire legal malpractice suit.

### III. Injunctive Relief Under The All Writs Act

The Hospitals finally maintain that under the All Writs Act, 28 U.S.C. § 1651, this Court has the power to enjoin enforcement of the state court's July 24, 2006 order. (Hospitals' Memo in Support, PP. 13-16). The All Writs Act provides in relevant part as follows:

- 8 -

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). The Court views its power under the All Writs Act in conjunction with the Anti-Injunction Act, which states as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. This Act is, "an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977). The exceptions are construed narrowly, however, and "(a)ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Vendo Co., 433 U.S. at 630 (internal quotations and citation omitted); see also Employers Resource Management Co., Inc. v. Shannon, 65 F.3d 1126, 1130 (4th Cir. 1995), cert. denied, 516 U.S. 1094 (1996).

Upon consideration of the foregoing standards, the Court declines the Hospitals' invitation to enjoin the state court's order. Specifically, as explained above the Court does not find an injunction necessary to effectuate any of the rulings issued in the qui tam litigation. The Court thus will deny the Hospitals' Motion to Enforce in its entirety.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that BJC Health System's, Barnes-Jewish Hospital's, and Saint Louis University's Motion to Enforce this Court's Orders and for Injunctive Relief (Doc. No. 221) is **DENIED**.

Dated this  19th   day of October, 2006.

                                                /s/ Jean C. Hamilton
                                                UNITED STATES DISTRICT JUDGE